UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY BAIR,

              Plaintiff,                  Case No. 2:21-cv-13027

v.                                     Honorable Jonathan J.C. Grey

CRYSTAL GLASS, INC.,

              Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (ECF No. 11)**

Anthony Bair has a serious hip condition that required surgery. He asked his employer, Crystal Glass, to lay him off so that he would be eligible for unemployment and to rehire him once he recovers. Crystal Glass agreed to do so if Bair provided a doctor's note medically clearing him to work. Instead, after he recovered, Bair gave his doctor's note to two other employers and worked for those other employers. Bair is suing Crystal Glass, claiming that it did not rehire him after his hip surgery because of his disability, thus violating the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq.

Crystal Glass filed a motion for summary judgment under Civil

Rule 56(a), but a hearing is not necessary. E.D. Mich. LR 7.1(f)(2). Since there is no adverse employment action or evidence of pretext, the motion for summary judgment is **GRANTED**.

## I.  BACKGROUND

Bair's employment with Crystal Glass began in July 2014. (ECF Nos. 1, PageID.2; 11, PageID.65.) Crystal Glass is a contractor that specializes in the installation of glass and entrusted Bair with his "first job in the glass industry," (ECF No. 11-3, PageID.105), assigning him with tasks often performed outdoors, several stories high, navigating precarious balances on ladders and scaffolding. (ECF No. 11, PageID.65.)

Bair's employment at Crystal Glass included periods of hiring, termination, rehiring, and eventual separation, underpinned by COVID-19 and the fluctuating needs of Crystal Glass and Bair's preexisting medical condition—a long-term degenerative-hip condition known as avascular necrosis.[1]

Bair's initial departure from Crystal Glass occurred in September

---

[1] "Avascular necrosis is a condition of bone deterioration or bone death due to deficient blood supply to the area." *Middleton v. Sec'y of Health & Hum. Servs.*, 904 F.2d 36 n.4 (6th Cir. 1990) (per curiam) (unpublished table decision) (citing THE SLOANE-DORLAND ANNOTATED MEDICAL-LEGAL DICTIONARY 476).

2015. Crystal Glass attributes that separation to numerous disputes that Bair had with coworkers at job sites. (ECF No. 11-4, PageID.192 ("[H]e had given us problems in the past and was kind of didn't get along with a lot of the guys."). Bair contends that Crystal Glass "has no details" and "denie[s] that h[is employment] was terminated." [2] (ECF No. 14, PageID.329 n.1.) Bair's HR record says "Fired." (ECF No. 11-5, PageID.242.)

Approximately 17 months later, Bair called Crystal Glass and "asked" to be rehired. (ECF Nos. 11, PageID.66; 11-6, PageID.253–254; *see also* ECF No. 1, PageID.2.) Crystal Glass "was reluctant," (ECF No. 11-6, PageID.253), but Bair "apologized . . . for his behavior" and was "enduring a brutal divorce and custody battle," so Crystal Glass agreed to rehire Bair to work "sporadically." *Id.* at PageID.254. He was rehired in late February 2016. (ECF No. 11-5, PageID.242.) Bair "quit" his job exactly 17 months later, on July 27, 2017. *Id.*

Sometime in early 2019, (*see* ECF No. 14-1, PageID.353), Bair was

---

[2] This statement seems inconsistent with Bair's prior allegation that he "ceased being employed by Crystal Glass in or around 2017." (ECF No. 1, PageID.2.)

working for an undisclosed employer where "he fell from a ladder."[3] (ECF No. 11-7, PageID.292.) As a result, he "exacerbated," (ECF No. 14, PageID.329), his preexisting "avascular necrosis of both hips." (ECF No. 14-1, PageID.353.)

Bair has not disclosed the details of what happened after his injury, but he eventually "reached out to" Crystal Glass again "to convince [them] that it would be a good idea to bring him back." (ECF No. 11-6, PageID.255.) Four members of Crystal Glass's management took Bair's request "under consideration . . .[,] discussed it[,] and . . . were desperate enough to try again." *Id.* Bair's third stint at Crystal Glass began on November 22, 2019. (*See* ECF No. 11-5, PageID.242.)

The onset of the COVID-19 pandemic in March 2020 ushered in a period of uncertainty and operational shutdowns for Crystal Glass, which laid off its entire workforce, including Bair, from March 22–May 11, 2020.[4] (ECF No. 11-6, PageID.257). It was during this tumultuous time

---

[3] Another part of the record states that Bair told Crystal Glass that he "had fallen off a roof and through some trusses" while working for "Damico." (ECF No. 14-4, PageID.378.) But it is not altogether clear if the two incidents are the same one. Bair has not provided the exact date of either incident but believes it "took off during an injury at damico and progressed at crystal glass." (ECF No. 14-2, PageID.361.)

[4] Two of the glaziers were not called back to work due to a lack of work

that Bair's health greatly declined.

On May 19, 2020—one week into his fourth term of employment—
Bair disclosed his avascular necrosis to Crystal Glass for the first time.
(ECF No. 11-7, PageID.292.). He had "suffered a flare up." (ECF No. 14,
PageID.329.) In the same conversation, Bair told Crystal Glass's
scheduler that it was the scaffolding work which worsened his pain,
asked to be given other work, had his request granted, and was told "to
speak up if [he] can't do something." (ECF No. 11-8, PageID.294–295.)
Bair testified "that was the last scaffolding job [he] was on." (ECF No. 11-
3, PageID.118 (emphasis omitted).) Indeed, Crystal Glass told Bair that
it would continue to send him to jobs "with that light duty," but that such
jobs were "limited" due to COVID-19. (*See* ECF No. 11-11, PageID.301.)

On May 31, 2020, Bair texted Crystal Glass's CFO, saying he was
getting a "resurfacing" surgery for his hip on June 16, 2020. (ECF No. 14-
2, PageID.356.) The resurfacing surgery required six weeks of recovery
and would have Bair "returning to light duty after that." *Id.* Bair
responded that he was hesitant to work during the 15 days before his
surgery because further tissue decay might lead to a full hip replacement,

---

(ECF No. 11-6, PageID.258).

so he asked if he could go "on short term disability."[5] *Id.* Crystal Glass told Bair that it does not offer short-term disability and thus referred Bair to the Social Security Administration. *Id.* at PageID.356–357. Bair countered, asking if Crystal Glass would "l[ay him] off the week of the surgery." *Id.* at PageID.357. Crystal Glass agreed to "lay [Bair] off." *Id.* at PageID.359.

The next day, Bair and Crystal Glass's CFO spoke on the phone. Bair changed his requested accommodation, asking if he could be laid off at least one week before his surgery because it required him to quarantine to avoid contracting COVID-19. (*See* ECF No. 11-3, PageID.132.) Bair said that he wanted to be laid off rather than to receive unpaid medical leave so that he could receive unemployment benefits, enhanced due to COVID-19 legislation, until he returned to work. (*See* ECF No. 11-4, PageID.202.)

Crystal Glass granted Bair's accommodation request—five days sooner than Bair even wanted it. Bair testified that having his accommodation request granted earlier than he wanted "didn't bother

---

[5] Bair's reasoning seems to contradict his later testimony that this level of necrosis "could take five years." (ECF No. 11-3, PageID.132.)

[him]," because it "was close enough to [his required] week quarantine." (ECF No. 11-3, PageID.132.) "[T]he whole plan was that [Bair] would come back to work afterward"—if he provided "a doctor's note and . . . the doctor cleared him to come back to work." (ECF No. 11-4, PageID.202; *accord* ECF No. 11-3, PageID.128.) Crystal Glass assigned Bair to the lightest duties available, and though Bair was concerned about catching COVID-19, he worked light-duty jobs in Detroit on June 2 and 3, 2020, because no other work was available. (*See* ECF No. 11-12, PageID.306).

On June 4, 2020, Bair called off, saying he was physically unable to work. (ECF No. 11-3, PageID.132.) His text said that "the little up and down on the ladder yesterday hurt [his] hip" such that he could not "do anything." (ECF No. 11-12, PageID.303.). After Crystal Glass unsuccessfully searched for other light-duty work for Bair, it informed him that it was "going to go ahead and lay [him] off today." (ECF No. 11-13, PageID.310.) Crystal Glass's records list Bair's reason for termination as "Asked to be laid off." (ECF No. 11-5, PageID.242.)

Meanwhile, Crystal Glass was experiencing a significant slowdown in business due to COVID-19, leading to a state of uncertainty within the industry. (ECF No. 11-4, PageID.202–203.) The general contractors were

pushing Crystal Glass to continue operations, while site owners were shutting down job sites, citing varying company policies and COVID-19 safety concerns. *Id.* at 205. This led to multiple projects being paused, and Crystal Glass laid off 10 other glaziers within 28 days of Bair's voluntary lay off. (Ex 1; 11-14, PageID.312.) Crystal Glass had no idea when it would be permitted to resume work. (ECF No. 11-4, PageID.206.)

During that time, Bair had successfully filed for unemployment. Crystal Glass did not contest the unemployment claim, and then—though Bair was voluntarily laid off on June 4, 2020—Crystal Glass "reported [Bair's] lay off to the health insurance as [June 30, 2020,] so [his] surgery would be covered." (ECF No. 14-4, PageID.378.)

Bair had his resurfacing surgery on June 16, 2020, was discharged two days later, (ECF No. 14-3, PageID.363), and was not expected to be medically permitted to work until at least July 28, 2020. (*See* ECF No. 11-3, PageID.133.) According to Crystal Glass, Bair's return date was around August 2020. (ECF No. 14, PageID.331 (citing ECF No. 11-4, PageID.204 (Bair "was expected to fully recover around August 2020."))).)

On June 27, 2020, Bair texted a photo of his surgery and the word "Progress" to Crystal Glass management. (ECF No. 14-2, PageID.359.)

Crystal Glass replied three days later, reminding Bair to "look[] into disability" because business was "slow now[,] and [it] probably wo[uld]n't be able to hire [Bair] back." *Id.* at PageID.360 ("Honestly it's not likely.").

On July 3, 2020, Bair texted Crystal Glass, threatening to sue. He told Crystal Glass that he, his "lawyer[,] and [his] doctor" had "come to the realization that [his] injury was necrotic in nature but took off during an injury at damico and progressed at crystal glass." (ECF No. 14-3, PageID.361.) He said that he "[w]as not put on light duty and was further hurt from scaffold climbing and ladder use." *Id.* His plan was to sue for "religious discrimination." (ECF No. 11-16, PageID.316–318.) Bair sent similar text messages to Crystal Glass's health-insurance agent, saying that the company is "such an asshole to kick [him] while [he's] down." (ECF No. 11-17, PageID.320.) His lawsuit would not be motivated by the money, he said, he was "just trying to get a little redemption" and for this decision "to cost [Crystal Glass money." *Id.*

On July 8, 2020, Crystal Glass emailed Bair. (ECF No. 14-4, PageID.378–379.) The email lists Crystal Glass's extensive support, including payroll advances, gas money, use of a company car, and a layoff at Bair's request for unemployment benefits, despite his eligibility for

9

disability. *Id.* It notes that Bair's difficulty getting unemployment was not unique during the pandemic, and suggests consulting a specialist, while also mentioning that Crystal Glass extended Bair's health-insurance coverage for surgery as a significant benefit. *Id.* It also clarifies that Bair's past injuries and conditions were not incurred at Crystal Glass, and it again advises Bair on disability options. *Id.* And the email denies any wrongdoing, confirms Crystal Glass's willingness to discuss further, and encourages continued efforts with the unemployment agency and Social Security Administration, expressing sympathy for Bair's situation because Crystal Glass's "work ha[d] slowed down significantly due to a slow reopening and [it] likely wo[uld]n't have work for [Bair] anytime in the foreseeable future." *Id.*

Unfortunately, Bair had no physical therapy and could not walk until October 2020. (*See* ECF No. 11-3, PageID.144.) Once he could walk—six months after his surgery—he applied for and began working in construction at Silver Line Contracting in December 2020. *Id.* at PageID.145. Eight months later, he returned to his profession as a glazier with another company. *Id.*

Although Bair received a signed "return to work slip," he never gave

it to Crystal Glass. (ECF No. 11-3, PageID.137.) Bair, feeling dismissed, testified that he did not see the point in presenting the doctor's note, believing his employment had been terminated. (ECF No. 11-3, PageID.136.)

On December 28, 2021, Bair sued Crystal Glass, initially bringing four claims. (*See generally* ECF No. 1). But the parties have stipulated to dismiss one claim. (ECF No. 10). All that remain are three ADA claims: (1) discrimination and (2) failure to accommodate based "solely upon Crystal Glass'[s] failure to grant him a medical leave," as well as (3) retaliation based on Bair's "request for a reasonable accommodation and the assertion of his ADA disability rights." (ECF No. 14, PageID.339.)

Crystal Glass has filed a motion for summary judgment. (ECF No. 11.) The motion has been fully briefed. (ECF Nos. 14; 16.)

## II.   LEGAL STANDARD

To prevail on summary judgment, movants must identify record evidence showing that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(a). If so, then the burden shifts to the nonmovant to identify specific facts that create "a

11

genuine issue for trial," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted), which requires more than "a mere scintilla of evidence," *id.* at 251, more than "metaphysical doubt," *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). All inferences must be reasonable, logical, and drawn in the nonmovant's favor to determine whether any party must prevail as a matter of law. *Liberty Lobby*, 477 U.S. at 251–52.

## III. ANALYSIS OF MOTION FOR SUMMARY JUDGMENT

Crystal Glass argues that Bair's complaint should be dismissed because he cannot establish prima facie cases of (1) disability discrimination, (2) a failure to accommodate his disability, or (3) retaliation. ECF No. 11. Each argument will be addressed in turn.

### A. All Three Claims Lack an Adverse Action

To survive summary judgment on all three of his ADA claims, Bair must demonstrate a genuine question of fact that he "suffered an adverse employment action." *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 395 (6th Cir. 2017) (discrimination); *id.* at 396 (retaliation); *Thompson v. Fresh Prods.*, 985 F.3d 509, 525 (6th Cir. 2021) (failure to accommodate). The Court concludes that summary judgment must be

granted in Crystal Glass's favor with respect to all three claims because Bair "cannot show that he suffered an adverse employment action." (ECF No. 16, PageID.395.)

According to Bair, "the termination of [hi]s employment is an obvious adverse employment action." (ECF No. 14, PageID.347.) Bair believes the adverse employment action occurred "when Crystal Glass fired him on June 30, 2020, while he was two weeks into recovery from his surgery, telling him he should not expect to be hired back." *Id.* at PageID.349 (citing ECF No. 14-2, PageID.359).

As a threshold matter, an employer cannot terminate the employment of someone who is not employed with that employer. There is no genuine dispute that Crystal Glass granted Bair's request to be voluntarily laid off so that he could reduce his presurgery exposure to COVID-19 while receiving unemployment-insurance benefits—and that request was intended to accommodate his disability. *See* discussion *supra* Part I.

Bair's response, says for the first time that "Bair's request to be laid off **was a request for unpaid medical leave**, which is a reasonable accommodation under the ADA." (ECF No. 14, PageID.346 (emphasis in

original).) But, Bair has not cited any record evidence supporting the assertion that he requested unpaid medical leave. Nor has this Court found any such evidence through an exhaustive search of the record. The only relevant evidence shows everyone involved understanding Bair's request as a "lay off." *See* discussion *supra* Part I. Therefore, no reasonable person could conclude that Bair requested unpaid medical leave; he successfully asked to be laid off. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c) . . . ."); Fed. R. Civ. P. 56(c). Bair's request to be "laid off" is the only reasonable conclusion.

Bair now notes that "Michigan Governor's Executive Order 2020-57, issued early in the pandemic amidst mass shutdown of businesses, temporarily suspended the normal unemployment requirements that employees leave work voluntarily or actively search for new work during the lockdown." (ECF No. 14, PageID.347–348.) But, Bair did not meet any of the criteria set forth in that Executive Order: he was not immunocompromised, displaying principal symptoms of COVID-19, having contact in the last 14 days with someone with a confirmed

diagnosis of COVID-19, required to care for someone with a confirmed diagnosis of COVID-19, or having a family care responsibility as a result of a government directive. *See* Executive Order 2020-57. Moreover, nothing in the record demonstrates that any of the actors involved in this case were aware of that Executive Order or its criteria at that time.

More significantly, Bair was not requesting unpaid medical leave. Rather, he received the exact disability accommodation that he requested: a voluntary lay off, which would have qualified him for unemployment under then-existing law. MICH. COMP. LAWS § 421.48 (2011) (permitting unemployment for an employee who "elects to be laid off" but not those on a voluntary "leave of absence"). Simply put, Bair has not worked for Crystal Glass since June 4, 2020, so his employment could not have ended after that day. Therefore, the June 30 text could not have terminated his employment, and his claims must be dismissed.

Bair's voluntary lay off is not "adverse." "When an employee voluntarily resigns, he cannot claim that he suffered an adverse employment decision under the ADA or the FMLA." *Schindewolf v. City of Brighton*, 107 F. Supp. 3d 804, 814 (E.D. Mich. 2015) (citing *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 447 (6th Cir.1999)).   Bair's claims

also must be dismissed for this reason.

Moreover, the June 30 text was a statement of probability. The text read that "it's not likely" that Bair would be rehired due to a reduction in workload. (*See* ECF No. 14, PageID.331.) A statement of probability is not considered an adverse employment action. *Adams v. Lucent Techs., Inc.*, 284 F. App'x 296, 302 (6th Cir. 2008) (citing *Agnew v. BASF Corp.*, 286 F.3d 307, 310–11 (6th Cir.2002) ("[t]heir uncertainty regarding the effect of [COVID-19] on their jobs does not [even] translate into a constructive discharge.")). Therefore, the text message also did not constitute an adverse employment action.

Some courts have found a triable question of fact as to whether an employer had a discriminatory motive for not providing a "call-back." *See, e.g., Thomas v. Monroe Cnty. Sheriff's Dep't*, No. 2:15-CV-11344, 2016 WL 5390860, at *7 (E.D. Mich. Sept. 27, 2016). In this case, Crystal Glass did call some employees back for work. (ECF No. 11-14, PageID.312.) However, such a "failure-to-hire claim" would require Bair to demonstrate that he "applied for the available position or can establish that the employer was otherwise obligated to consider him." *Ferrell v. Taylor Bldg. Prods.*, No. 1:13-CV-14915, 2014 WL 3361823, at *5 (E.D.

Mich. July 9, 2014) (first quoting *Wanger v. G.A. Gray Co.*, 872 F.2d 142, 145 (6th Cir. 1989); and then quoting *Owens v. Wellmont, Inc.*, 343 F. App'x 18, 24 (6th Cir. 2009)).

The Court finds that Crystal Glass was not obligated to call Bair back to work. Although Crystal Glass indicated that it would reemploy Bair, that reinstatement was contingent on Bair furnishing a doctor's note with medical clearance to work. (ECF No. 11-4, PageID.202; *accord* ECF No. 11-3, PageID.128.) Whether the medically approved work had to be full or limited, which the parties dispute, matters not at this juncture. It is undisputed that Bair got a doctor's note but never produced it to Crystal Glass or informed Crystal Glass that he had it. ECF No. 11-3, PageID.136.) Bair agreed to notify Crystal Glass when he could work again, but he never did so. ECF No. 11-4, PageID.202 ("He would have to give us a doctor's note."); ECF No. 11-3, PageID.128 (testifying that he "aware before [he] could come back to work [he] would need a doctor's certification that [he] would be able to return to work"). And, as Crystal Glass CFO testified, Bair would have received a callback "[i]f he was able to work and presented us with [proof] he was cleared to work." (ECF No. 11-4, PageID.207.) Bair never applied or asked to be rehired; and, instead

of contacting Crystal Glass when he got his doctor's note, he sought employment elsewhere—twice.

One exception to the failure-to-hire criteria is when the employer "create[s] an atmosphere in which employees understand that their applying for certain positions is fruitless." *Wanger v. G.A. Gray Co.*, 872 F.2d 142, 145 (6th Cir. 1989) (citing *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 867 (7th Cir. 1985)). "For this exception to apply, a pervasive, consistent, and continuing pattern or practice of discrimination must be shown to excuse an applicant from formally applying for the position." *Allen v. Deerfield Mfg.*, 424 F. Supp. 2d 987, 994 (S.D. Ohio 2006) (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365–68 (1977)). Bair has not produced evidence that could establish such an atmosphere of futility. The single July 30 text is a far cry from showing a pervasive, consistent, continuing pattern of discrimination. *See Wanger*, 872 F.2d at 145 ("The mere fact that Gray thought about Wanger and generally concluded that he was probably not qualified does not amount to creating an atmosphere of futility."). For these reasons, the Court declines Bair's argument regarding futility.

In sum, the Court finds that there is no triable question of fact in

this case, where Bair agreed to give Crystal Glass a doctor's note when he was ready for reemployment and failed to do so. Crystal Glass is not liable for failing to call Bair first. Accordingly, as there was no adverse employment action taken against Bair, Crystal Glass's motion is **GRANTED.**[6]

### B. ADA—Failure to Accommodate

Bair's failure-to-accommodate claim separately fails because he cannot demonstrate that "the employer failed to provide the necessary accommodation." *Thompson v. Fresh Prods.*, 985 F.3d 509, 525 (6th Cir. 2021) (citing *Johnson v. Cleveland City Sch. Dist*, 443 F. App'x 974, 983 (6th Cir. 2011))). As explained earlier, Bair asked to be laid off so that he could reduce his exposure to COVID-19 while collecting enhanced unemployment benefits, and he received that accommodation five days earlier than he requested it. *See* discussion *supra* Part I. To the extent that he now claims that he requested unpaid medical leave and did not receive it, that claim is not supported by the record. And if the

---

[6] "Because the [lack of an adverse action] is dispositive, this Court need not reach the Parties' other arguments . . . ." *Shupe v. Rocket Cos.*, 660 F. Supp. 3d 647, 670 (E.D. Mich. 2023) (citing *In re SmarTalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 527, 549 n.11 (S.D. Ohio 2000)).

accommodation was being rehired, again, Bair never asked to be rehired or provided the doctor's note that he promised as a condition of his reemployment. *See* discussion *supra* Section III.A. For these reasons, the Court also **DISMISSES WITH PREJUDICE** Count II.

### C. All Three Claims Lack Evidence of Pretext

Even if Bair could demonstrate every element of any of his prima facie cases—and, as discussed above, he cannot—all three claims would require him to demonstrate that the "the reason given by the employer was actually a pretext designed to mask retaliation." *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 396 (6th Cir. 2017). But, Bair has not identified any evidence that "the employer's reasons were false." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) ("[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason.").

Bair states that the doctor's note was false pretext not to rehire him. Bair argues that to be able to rely on that note, Crystal Glass had to request the note in a written communication (ECF No. 14, PageID.345), but he cites no law supporting that assertion. In addition, the record

includes unrefuted testimony that Bair learned of his obligation orally. *See* discussion *supra* Part I. Bair also acknowledges that the only legitimate "reference to a doctor's note was Solomon's verbal conversation with Bair in early June [2020]." (ECF No. 14, PageID.345.) Bair acknowledged, however, that he agreed to provide a doctor's note, that he was never instructed not to provide a doctor's note, and that he never provided a doctor's note as promised. *See id.*

Bair has made no attempt to demonstrate that the reason that Crystal Glass provided for not rehiring Bair was false, so all his claims fail for lack of pretext. Accordingly, Crystal Glass's motion for summary judgment is also **GRANTED** for this reason.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that defendant's motion for summary judgment (ECF No. 11) is **GRANTED**.

Further, it is **ORDERED** that plaintiff's complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**.

**SO ORDERED**.

Dated: March 31, 2024                    **s/Jonathan J.C. Grey**
                                          JONATHAN J.C. GREY
                                          United States District Judge

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 31, 2024.

<u>s/ **S. Osorio**</u>
Sandra Osorio
Case Manager